UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JAMES STEPHEN MCSPARRAN**,

Debtor.

Case No. **08-61606-13**

# MEMORANDUM OF DECISION

At Butte in said District this 27th day of March, 2009.

Pending in this Chapter 13 case is confirmation of the Debtor's Plan, filed December 3, 2008 (Docket No. 11). The Standing Chapter 13 Trustee Robert G. Drummond, of Great Falls, Montana, filed objections and appeared in opposition to confirmation at the hearing held at Missoula on February 12, 2009. The Debtor James Stephen McSparran ("Debtor") appeared and testified, represented by attorney Daniel S. Morgan ("Morgan") of Missoula, Montana. No exhibits were admitted. At the conclusion of the parties' cases-in-chief the Court took the matter of confirmation under advisement. After review of the record and applicable law, this matter is ready for decision. For the reasons set forth below a separate Order will be entered denying confirmation of the Debtor's Chapter 13 Plan for failure to satisfy his burden of proof under 11 U.S.C. § 1325, with leave to file amendments.

This Court has jurisdiction in this case under 28 U.S.C. § 1334(a). Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The Trustee stated at the hearing that his objections listed in paragraphs 3, 4, and 5 of his objection (Docket No. 14) have been resolved, but he continues to object based on paragraphs 1 and 2 that the Debtor's Plan fails

1

to satisfy the "disposable income" requirement of 11 U.S.C. § 1325(b). Debtor's counsel described the issue as the nondebtor spouse's payment of the parties' second home mortgage payment in Montana. This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

The Debtor is married, but his spouse is not a debtor in this Chapter 13 case. Debtor testified that he is a resident of California, but that he and his spouse live approximately half their time in California and the other half in Montana. He testified that he works selling and purchasing securities through Ameritrade, and that is his sole source of earnings. He testified that his spouse's sole source of income is an inheritance which she received in 2006 in the amount of $180,000, of which she has some remaining. Her inheritance is structured in an IRA, and the Debtor testified that he has no authority to withdraw funds from his spouse's inheritance. However, on cross examination he testified that he and his spouse mingle their financial affairs to some extent. They have a joint checking account, and when his spouse contributes to the household she withdraws money from her IRA and deposits it into their joint checking account.

Debtor and his spouse jointly own real property in California (the "California property") that they purchased in June of 2003. He testified that he and his spouse each pay for half of the mortgage payment owed on the California property, which is titled in both their names. He testified that he also owns property in Superior, Montana, (the "Montana property"), the address of which is 500 Holloways Mountainview Rd, which he purchased with his father-in-law for investment purposes. The Montana property consists of a house and 10 acres, which he testified is worth $225,000, plus another 30 acres of land. The Debtor testified that his spouse has no

2

ownership interest in the Montana property, but that notwithstanding she is making the mortgage payment on the Montana property, at her own discretion, to Countrywide, in order to protect her father[1]. Debtor testified that California is his primary residence, while the Montana property is an investment he hopes to sell for a profit, and that they currently live in Montana to protect their Montana property from vandalism[2].

The Debtor filed his voluntary Chapter 13 petition on November 18, 2008. He filed his Schedules, Form B22C and Plan on December 3, 2008. On Schedule A the Debtor listed the Montana property (all 40 acres and the house) as investment property with a total value of $300,000. He also listed the California property in San Diego County, consisting of a house and 3 acres, with a value of $200,000. Schedule C lists Debtor's exemptions claimed under California law, including the California property claimed as his homestead. Schedule D lists secured claims, including Countrywide listed in the amount of $279,678.83, secured by a deed of trust against 10 acres of the Montana property, Daniel Lee with a second mortgage against all 40 acres and the home in Montana[3], and GMAC Mortgage with a first mortgage against the California residence.

Schedule F lists $159,000.17 in unsecured claims, mostly credit card debt[4]. Schedule H

---

[1]Debtor testified that he has made the payment on the Montana property before, but that it has been quite awhile since he made a payment.

[2]He testified that their California property is rentable.

[3]The second mortgage arose as part of a deal between the Debtor and Wyman Properties, against which is listed an unliquidated claim of the Debtor on Schedule B. Wyman Properties is listed as employer of both the Debtor and his spouse on Schedule I.

[4]On redirect examination the Debtor was asked if his spouse would take money out of her IRA to pay for the Debtor's credit card debts. He answered: "Maybe." His spouse is listed on

lists Natalie Ann McSparran as a codebtor on the GMAC Mortgage and Capital One, and in addition "potential for community debt status on all."

Schedule I lists the Debtor's average monthly income in the sum of $3,450.00 and that of his spouse in the sum of $2,000.00, for a total of $5,450.00. Debtor's income is described as $2,000 estimated from stock trading, $950 income from real property, and $500 anticipated from "Wyman account receivable." His spouse's $2,000 income is described as "Work & Investment income (as needed)."

Schedule J lists Debtor's expenses in the amount of $5,149.07, including his "Wife's MT property pymt" in the amount of $2,066.54. Debtor testified that his spouse contributes to household expenses, and that she is actually making the payment on the Montana property, and he is not. Debtor's mortgage payment is listed on Schedule J in the amount of $754.67, which he testified is for the California property and which they both pay.

Debtor's Form B22C does not any income for his spouse, and lists his own income for the 6 months prior to the filing of his bankruptcy case as business income in the monthly amount of $1,333.33 in Part I. The Debtor did not explain the discrepancy between his Form B22C and his Schedule I income at the hearing. Part II calculates the applicable commitment period based on the Debtor's $1,333.33 monthly income multiplied by 12 and compared with the applicable median family income for Montana. Debtor's calculations prompt him at Line 17 to determine the applicable commitment period as 3 years. At Part III the Debtor concludes that his annualized current monthly income is less than the applicable median family income, so his

---

Schedule H as a codebtor for Capital One, which is listed on Schedule F as a creditor with an unsecured nonpriority claim in the amount of $10,864.96 described as "Credit card debt."

disposable income is not determined under 11 U.S.C. § 1325(b)(3) at Line 23. The rest of Form B22C is completed with "N.A.".

Debtor's Chapter 13 Plan proposes 60 monthly payments in the amounts of $300.00 for 20 months, then $650.00 for 20 months, and $950.00 for 20 months, for total funding in the amount of $38,000. Debtor offered no testimony or other evidence showing that he will be able to make the increased payments under the plan after the first 20 months.

Countrywide is treated in the Plan as unimpaired for the regular monthly payment, which is secured by the Montana property, and the plan further provides that an arrearage is to be paid to Countrywide in the estimated amount of $27,174.14. GMAC Mortgage is treated as unimpaired, as is Daniel Lee. The liquidation analysis provides that unsecured claims will be paid a distribution of at least $4,750.00 before any discharge is entered.

GMAC Mortgage filed Proof of Claim No. 3 on December 22, 2008, asserting a secured claim in the amount of $85,370.45. Countrywide Home Loans LP filed Proof of Claim No. 4 on December 30, 2008, asserting a secured claim in the amount of $300,071.93, and an arrearage in the amount of $20,555.28. No objections to allowance of those claims has been filed.

## DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241 (Bankr. D. Mont. 2006). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other

applicable provisions of this title." Therefore, the Debtor has the burden of proof on all elements of confirmation. *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

The Trustee bases his objection to confirmation on the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> * * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

*Tuss*, 360 B.R. at 690; *Tranmer*, 355 B.R. at 241. The Ninth Circuit recently explained: "If a trustee or holder of an allowed unsecured claim objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor's 'projected disposable income' received during the 'applicable commitment period' is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)." *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008).

The Trustee's first remaining objection is that the Debtor's Form B22C states he is a below median income debtor, and therefore subject to the three year applicable commitment period. Debtor's Form B22C, at Parts I and II, omits his spouse's income entirely in concluding that the Debtor is a below median income debtor based on his monthly $1,333 business income. That figure is contradicted by Debtor's sworn statements on his Schedule I that he earns $3,450

per month and his spouse earns[5] $2,000 per month, a total of $5,450. Debtor offered no explanation for the discrepancy between his income on Form B22C and Schedule I.

As a result of the unexplained omission of his spouse's income, Form B22C states at Parts I and II that the Debtor is a below median income debtor and the applicable commitment period is 3 years. The combined current monthly income of the Debtor and Debtor's spouse, however, must be used in Parts I of Form 22C. *See* 11 U.S.C. § 1322(d)(1) and (2) and 11 U.S.C. § 1325(b)(4). Under Part II of Form 22C a marital adjustment may be made if Debtor contends that the calculation of the applicable commitment does not require inclusion of the non-filing spouse's income because such income is not paid on a regular basis for household expenses of the Debtor or Debtor's dependents pursuant to 11 U.S.C. § 101(10)(A). Debtor failed to include his wife's income in Part I and made no marital adjustment in Part II. Debtor has the burden of proof under § 1325(a), and failed to explain the omission of his wife's income or to establish any marital adjustment, if appropriate. Such omission is material in determining the applicable commitment period and disposable income; the Court concludes that the Trustee's first objection is well taken and it is sustained and confirmation is denied.

The instant case presents a unusual issue for this Court, because the Debtor testified that he is a resident of California but he filed his Chapter 13 petition in Montana. Montana is not a community property state. *In re Marriage of Wellman*, 258 Mont. 131, 139, 852 P.2d 559, 564 (1993). California is a community property state. *Ordlock v. C.I.R.*, 533 F.3d 1136, 1137(9th Cir. 2008).

---

[5]Schedule I states that Debtor's spouse has been employed as a truck driver and land developer at Wyman Properties for 6 years.

In California, all property acquired by a married person during the marriage is generally considered community property, Cal. Fam. Code § 760, and community property is liable not only for the joint debts of the couple, but also for the separate liabilities of one spouse for a debt incurred by either spouse before or during marriage, regardless of which spouse has management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. *Id.*, 533 F.3d at 1138-39. The Ninth Circuit wrote:

> Because domestic relations are preeminently matters of state law . . . Congress, when it passes general legislation, rarely intends to displace statutory authority in this area." *Mansell v. Mansell*, 490 U.S. 581, 587, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Moreover, the Supreme Court has held that federal supplants community property law only where the congressional intent to accomplish such a result is clear and unequivocal. *See id.*; *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

*Ordlock v. C.I.R.*, 533 F.3d at 1140.

The Bankruptcy Code has not supplanted community property law. On the contrary, 11 U.S.C. § 541(a)(2) provides that property of the estate includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is – (A) under the sole, equal or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." The California statutes cited above appear to make the Debtor's nondebtor spouse's interests property of the estate under § 541(a)(2)(B).

In a case construing Washington community property law, the Ninth Circuit BAP noted that a spouse's income and interests are community property, barring an exception under Washington law. *In re Hull*, 251 B.R. 726, 732-33 (9th Cir. BAP 2000). In the instant case the

Debtor testified that he and his spouse co-mingle their financial affairs to some extent. She pays the Montana property mortgage payment and contributes to their household expenses. No evidence exists in the record that they are living separate and apart or that they have an agreement which would negate the Debtor's community interest in her income and assets. *See, e.g., Hull*, 251 B.R. at 733.

Debtor's Form B22C does not list his spouse's income, despite it being listed on Schedule I and in spite of the fact that California community property laws apply. Debtor offered no testimony or evidence in explanation for that omission, which as shown above could result in a different applicable commitment period and a requirement that disposable income be determined under § 1325(b)(3).

The Trustee's second objection to confirmation contends Debtor's Plan fails to satisfy the "disposable income" test of 11 U.S.C. § 1325(b)(1) because of payments the Debtor is making on the two homes, including the second home in California, while the Debtor claims to be a below median income debtor. The Trustee contends the second home is a luxury item and not reasonably necessary for the maintenance of the Debtor's home. That ground for objection may no longer apply.

"Disposable income," as defined at § 1325(b)(2), was significantly changed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). *Kagenveama*, 541 F.3d at 873 n.2. Section 1325(b)(2) now provides, in pertinent part:

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with

9

>applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
>>(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>>
>>(ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>>
>>(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*Tuss*, 360 B.R. at 691; *Tranmer*, 355 B.R. at 241-42.

This Court applies a mechanical test in which its discretion to determine the reasonableness of a debtor's expenses in calculating disposable income has been curtailed by BAPCPA. *Tranmer*, 355 B.R. at 243-44, 246; *Tuss*, 360 B.R. at 691-92, 695.

In *Kagenveama* the Ninth Circuit rejected case authority which held that "projected disposable income" is not related to "disposable income" as articulated in *In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006), "because the plain language of § 1325(b) links 'disposable income' to 'projected disposable income,' and we are bound by the definition of 'disposable income' provided in § 1325(b)(2)(B)." *Kagenveama,* 541 F.3d at 874 . The Ninth Circuit wrote that the line of authority in *In re Pak*, 378 B.R. 257, 263, 268 (9th Cir. BAP 2007) and *In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006),

>is unpersuasive because no text in the Bankruptcy Code creates a presumptively correct definition of "disposable income" subject to modification based on anticipated changes in income or expenses. In fact, the textual changes enacted by BAPCPA compel the opposite conclusion. The revised "disposable income" test

> uses a formula to determine what expenses are reasonably necessary. *See* 11 U.S.C. § 1325(b)(2)-(3). This approach represents a deliberate departure from the old "disposable income" calculation, which was bound up with the facts and circumstances of the debtor's financial affairs. *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007); *In re Farrar-Johnson*, 353 B.R. 224, 231 (Bankr. N.D. Ill. 2006) (stating that "[e]liminating flexibility was the point: the obligations of [C]hapter 13 debtors would be subject to clear, defined standards, no longer left to the whim of a judicial proceeding") (internal quotations omitted).
>
> \* \* \* \*
>
> We decline to follow the line of cases holding that Form B22C creates a presumptively correct definition of "disposable income."

*Kagenveama*, 541 F.3d at 874-75.

This Court's decision, *In re Kaufman*, 2008 WL 3878005, *4 (Bankr. D. Mont. 2008) cited *Kagenveama* for the proposition that, for above median income debtors, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B). This Court in addition has adopted the analysis from *In re Austin*, 372 B.R. 668, 680-83 (Bankr. D. Vt 2007), that where a debtor is current on a secured obligation that is provided for in Form 22C, the Court refrains from determining whether the expense is reasonable.

In the instant case a question exists whether the Debtor is above median income or below median income, because the Debtor failed his burden of proof to explain his omission of his spouse's income or any marital adjustment on Form B22C. If Debtor is an above median income Debtor then the mechanical or formula test applies and this Court does not examine separately the reasonableness of the expenses, but rather pursuant to § 1325(b)(3) the Debtor's expenses must be determined under the "Means Test" of § 707(b)(2)(A) and (B). *Tranmer,* 355 B.R. at 245-46; *Tuss*, 360 B.R. at 691, 695.

Finally, the Court considers the feasibility requirement of § 1325(a)(6), whether the

11

Debtor will be able to make all payments under the plan and to comply with the plan.  Debtor's Plan provides for payments in the sum of $300 per month for 20 months, then $650.00 for 20 months, and $950.00 for 20 months.  Schedule J shows $300.93 monthly net income available for plan payments from Debtor's and his spouse's combined incomes.  Debtor offered no testimony or other evidence showing that he will be able to make the increased payments under the plan after the first 20 months.  The amount of his spouse's remaining inheritance is not in the record.  Therefore, the Court concludes that the Debtor failed to satisfy his burden of proof under § 1325(a)(6) to show that he will be able to make all payments under the Plan.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtor's Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3. Debtor failed to satisfy his burden of proof under 11 U.S.C. § 1325(b)(1)(B) and (b)(2) to show that his Plan provides for that all of the Debtor's projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors under the Plan.

4. Debtor failed to show why his community property interest in his spouse's property and income was not included in Form B22C in calculating his current monthly income, applicable commitment period and disposable income.

5. Debtor failed to satisfy his burden of proof under § 1325(a)(6) that he will be able to make all payments under the Plan and to comply with the Plan.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above sustaining the Chapter 13 Trustee's objection, denying confirmation of the Debtor's Chapter 13

Plan, granting the Debtor ten (10) days to file an amended Plan, Schedules, and/or Form B22C, and setting the final hearing on confirmation for April 16, 2009, at Missoula.

                                       BY THE COURT

                                       */s/ Ralph B. Kirscher*
                                       HON. RALPH B. KIRSCHER
                                       U.S. Bankruptcy Judge
                                       United States Bankruptcy Court
                                       District of Montana